BACKGROUND
EAGÁN, Judge.
The plaintiff brought the present action alleging that the suspension of his gaming license and barring from the Mohegan Sun Casino was improper. The suspension was the result of an investigation conducted by the Security Department of the Mohegan Sun Casino involving alleged illegal activity on the part of patrons and employees of the Mohegan Sun Poker Room. The alleged activities included the purchase and use of illegal substances, marijuana and the trafficking and use of prescription controlled drugs in the Poker Room. The plaintiff, Edward C. Wybraniec, was identified as one of the employees of the Poker Room involved in these activities.
As a result of the Security Department’s investigation a notice dated June 26, 2003 was sent to the plaintiff suspending his gaming license and barring the plaintiff from the Casino property. The notice cited Section 13 of the Mohegan Tribal Ordinance 95-2, Section 5(10) as grounds for the suspension. The notice also cited Section 7(b)(ii) as the authority to bar the plaintiff from the Mohegan Sun Casino. The decision was based upon “disorderly conduct as you have been purchasing marijuana from a fellow employee for years”. The defendant stated that the conduct of the plaintiff “poses a threat to the effective regulation of gaming or creates or enhances the chances of unfair or illegal methods, and/or illegal activities in the conduct of gaming and jeopardizes the public safety of the gaming facility”.
The plaintiff filed a timely request for hearing. The hearing was held was held on September 4, 2003, at which time the plaintiff was present and represented himself pro se.
Following the evidentiary hearing on September 4, 2003 the MTGC’s hearing officer made the following Findings of Fact:
1. The defendant’s decision to suspend Mr. Wybraniec’s license and bar him from the reservation is based upon his conduct of purchasing marijuana from another casino employee.
2. The defendant presented the following Exhibits into the record:
A. (Exhibit# 1) A copy of defendant’s letter dated June 26, 2003 to Mr. Wybraniec suspending his license and barring and excluding him from the reservation.
B. (Exhibit # 2) A copy of Mr. Wy-braniec’s letter requesting a hearing.
C. (Exhibit # 3) A copy of the defendant’s letter notifying Mr. Wy-braniec of his scheduled hearing.
D. (Exhibit # 4) A copy of a statement by Edward Wybraniec dated May 14, 2003.
E. (Exhibit # 5) A copy of an extract from Security Report 2003-002343.
3. Mr. Wybraniec had his gaming license suspended by the defendant and was barred from the casino and reseivation. This was based upon an investigation into illegal activities in the Poker Room. The *302 investigation provided the Commission with additional leads resulting in the questioning of Mr. Wybran-iec.
4. MTGC’s hearing officer took testimony form Leo Holowczak, a Security Investigator. In his testimony, Mi-. Holowczak explained that Mr. Wybraniec was interviewed after additional information was developed in a Poker Room investigation.
5. As a result of questioning by Security, Mr. Wybraniec completed a statement (Exhibit# 4) outlining certain activities by himself and other employees and patrons in the Poker Room.
6. As part of Security’s investigation of the Poker Room, a report was filed (Exhibit # 5) indicating Mr. Wybraniec’s knowledge and illegal purchase of prescription drugs from another employee, Paul De-Profio.
7. MTGC’s hearing officer took testimony from employee Robert Staehle. Mr. Staehle confirmed that he has seen Mr. Wybraniec purchase marijuana in the past. He stated he had never seen Mr. Wybraniec purchase prescription drugs.
8. Mr. Wybraniec stated in the hearing that he has smoked marijuana off the casino property. He also states in Exhibit #4 that he routinely buys marijuana from another casino employee. He also stated, in Exhibit # 4 that he has received pain pills from employee Paul De-Profio.
9. The Mohegan Sun policy on Personal Conduct (# 27) describes certain activities that are prohibited by all employees. Item # 12 is the “Purchase, sale, possession or use of illegal drugs at any time on or off duty”.
10.Mr. Wybraniec’s admittance to use of illegal drugs in Exhibit # 4 and his testimony prove that he violated the casino’s policy on personal conduct. His actions further indicate his unsuitability for continued licensing at Mohegan Sun. The use of illegal drugs indicates that his conduct is a threat to the integrity of gaming at Mohegan Sun. The Gaming Commission action to bar him from the facility and grounds is also warranted. These activities are inconsistent with the goals of the Management and prevent further contact by Mr. Wybraniec with those he was involved with in the purchase of drugs.
The MTGC’s hearing officer also made the following conclusions of law:
1. Under the Tribal-State Gaming Compact the MTGC has the “primary responsibility for oversight of tribal gaming operations.” Compact, Section 13(a). The MTGC has the duty and responsibility to monitor all gaming operations to assure that all provisions of the Compact and tribal gaming ordinances and policies are enforced.
2. Included within this authority is the power to bar and exclude persons, including employees of the gaming facilities, because of their engagement in disorderly conduct or based upon their activity that poses a threat to the integrity of the gaming activities of the Tribe. Under Section 7(b)(ii) of the Tribal Gaming Compact, the MTGC is required to establish a list of persons barred from the gaming facilities.
*303 3. The decisions of the MTGC to bar persons must be supported by credible evidence of either criminal activity, disorderly conduct, other activity or conduct that would pose a threat to the integrity of the gaming activities of the Tribe or jeopardize public safety in the gaming facility. Furthermore the MTGC must allow the person who is subject to the action the right to appeal the decision and the opportunity to present any and all evidence to the MTGC that pertains to the activity in question.
4. Also included in this authority is the power to suspend or revoke licenses of employees of the gaming facility under the provisions of Mohegan and Federal laws as follows: MTO 95-2, An Ordinance Establishing the Mohegan Tribal Gaming Authority (“MTGA”), grants the MTGA the power over licensing and vests in the Director of Regulations (“Director”) the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Section 12(5) provides that the Director “shall carry out the Tribe’s regulatory duties” as described in MTO 94-1 and vests in the Director the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Section 12(5) provides that the Director “shall carry out the Tribe’s regulatory duties” as described in MTO 94-1 and vests in the Director “final authority over all license applications.” MTO 94-1 also incorporates the Indian Gaming Regulatory Act (“IGRA”), in which one of its purposes is to protect against “threats to the public interest, or the interest of the Tribe or to the effective regulation and control of gaming.” See 25 U.S.C. Section 2710(b)(2)(F)(ii)(II).
5. The decisions of the defendant to suspend or revoke an employee’s license must be supported by credible evidence of activities, criminal conviction, reputation, habits and/or associations that pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, methods, and activities in the conduct of the gaming activities.
6. In its hearings, the MTGC employs a “preponderance of the evidence” standard of proof.
LEGAL STANDARD OF REVIEW
The standard of review of an agency’s final decision in an appeal filed pursuant to MTO 2002-13 is substantially similar to that under the Connecticut Administrative Procedures Act, C.G. S. Section 4-183(j). La Pietra v. Office of Director of Regulation, 1 G.D.R. 126, 127, 4 Am. Tribal Law 535, 2003 WL 25796262 (2003). “If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding, the decision must be upheld.” Id. The court is not permitted to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. MTO 2002-13 Section 3(j). Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 116, 4 Am. Tribal Law 522, 2003 WL 25795195 (2003).
Nevertheless, the court may not affirm a decision not supported by substantial evidence in the record. Bialowas v. Commissioner of Motor Vehicles, 44 Conn.App. 702, 709, 692 A.2d 834 (1997). If substantial rights of the plaintiff have been prejudiced by administrative find *304 ings, inferences, conclusions, or decisions were affected by error of law or were clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, the court shall sustain the appeal and may either remand the case or enter judgment. MTO 2002-13 Section 3(j)-(k).; Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 117, 4 Am. Tribal Law 522, 2003 WL 25795195 (2003).
Additionally because the initial hearing was administrative in nature, it is permissible to admit testimony that could be considered hearsay in nature as long as it is reliable and probative. Hultman v. Department of Social Services, 47 Conn. Supp. 228, 783 A.2d 1265 (2000); Paquette v. Hadley, 697 A.2d 691, 45 Conn.App. 577 (1997).
The following Mohegan ordinances are applicable in this case. MTO 95-2 grants the Mohegan Tribal Gaming Commission the power over licensing and vests in the Director the duty of “issuing and revoking licenses and generally overseeing the integrity of the gaming operation.” Sec. 5(b)(10). Sec. 12(5) provides that the Director “shall carry out the tribe’s regulatory duties” as described in MTO 94-1, and vests in the Director “final authority over all license applications.”
MTO 94-1 incorporates the Indian Gaming Regulatory Act, 25 U.S.C. Secs. 2701 et seq., and sets forth in Sec. 9 qualifications for gaming licenses. One of the purposes is to protect against “threats to the public interest, or the interest of the Tribe or to the effective regulation and control of gaming.” See 25 U.S.C. Sec. 2710(b)(2)(F)(ii)(II).
As stated in the Kochachy case, these ordinances comply with the requirement of Sec. 7(a) of the “Compact” to “adopt standards of operation and management to ... protect the public interest in the integrity of the gaming operations ...” (emphasis added). Kochachy v. Office of the Director of Regulations, 1 G.D.R. 115, 116, 4 Am. Tribal Law 522, 2003 WL 25795195 (2003).
REVIEW OF THE DEFENDANT’S ORDER
The plaintiff has admitted to the use of marijuana during his employment. The source of the factual finding, while perhaps technically hearsay, was properly considered by the defendant in revoking the plaintiffs gaming license and barring the plaintiff from the Casino. Hultman v. Department of Social Services, 47 Conn. Supp. 228, 783 A.2d 1265 (2000); Paquette v. Hadley, 45 Conn.App. 577, 697 A.2d 691 (1997). The court heard oral argument at which time the plaintiff had an adequate opportunity to present evidence. After reviewing the entire record, this court does not find any reason to disallow the statements of both the plaintiff himself and that of a co-worker. The statements appeared to this court to be both reliable and probative. None of the evidence presented by the plaintiff has provided the court with grounds to change the factual findings of the defendant.
As indicated above, in the present case, the function of this court on appeal is limited to determining that there was substantial evidence to support the findings of the hearing officer. The defendant has discretion and this cannot substitute its discretion for that of the defendant. The findings of the hearing officer are consistent with the “zero tolerance” policy of the MTGC in regards to drug usage on the Casino Premises.
CONCLUSION
Based upon the admitted facts and substantial evidence on the record, the appeal of the plaintiff is dismissed.